**Priority** ✓
**Send**
**Enter**
**Closed**
**JS-5/JS-6**
**JS-2/JS-3**
**Scan Only**

FILED
CLERK, U.S. DISTRICT COURT

FEB 18 2004

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| NOELLE WAY, | ) No.  CV 01-5401 CBM (Ex) |
| Plaintiff, | ) ORDER DENYING MOTION FOR SUMMARY JUDGMENT |
| v. | ) |
| COUNTY OF VENTURA, et al., | ) |
| Defendants. | ) |

The matter before the Court, the Honorable Consuelo B. Marshall, Chief Judge, presiding, is Defendants Karen Hanson and Sheriff Robert Brooks' Motion for Summary Judgment based on qualified immunity.  The parties appeared before this Court for oral argument on January 29, 2004.  Upon consideration of the papers submitted and the arguments presented, the Court DENIES Defendants' Motion for Summary Judgment.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983.



DOCKETED ON CM

FEB 20 2004

BY                    006

90

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Noelle Way ("Plaintiff") was arrested on September 6, 2000 by City of San Buenaventura Police Officer Robert Ortiz for being under the influence of a controlled substance in violation of California Health and Safety Code § 11550(a), a misdemeanor.  Plaintiff was taken to the Ventura County Medical Center so that she could provide a blood sample, and then to the pretrial detention facility ("county jail") to be booked on the charge.  Pursuant to Ventura County Sheriff's Department's policy of performing visual body cavity searches of every pretrial detainee arrested for an alleged § 11550 violation, Deputy Sheriff Karen Hanson performed a visual unclothed body cavity search of Plaintiff.  After being in jail for approximately 12 hours, Plaintiff was released after her ex-husband produced the $10,000 bail for her.  On November 6, 2000, plaintiff's blood tests were returned and the district attorney declined to file charges.

In her First Amended Complaint, filed December 12, 2001, Plaintiff alleges Fourth and Fourteenth Amendment violations arising out of the search against the County of Ventura; the Sheriff of Ventura County, Robert Brooks; and the deputy sheriff who performed the search, Karen Hanson.  Plaintiff also sues Ortiz for false arrest under 42 U.S.C. § 1983 and other state law claims.

On July 22, 2002, this Court ruled on summary judgment that Ventura County's strip search policy allowing the visual unclothed body cavity search of Plaintiff without her ever being released into the general prison population and without a determination of reasonable suspicion, violated Plaintiff's constitutional rights.  The Court did not reach the issue of whether a strip search of a plaintiff who was released into the general prison population would also constitute a constitutional violation.   At the conclusion of this Court's Order denying Defendants' Motion for Summary Judgment in the *Way* case, the Court invited the Defendants to file briefs as to whether they were entitled to qualified

- 2 -

1   immunity.  Prior to filing any briefs on this issue, Defendants appealed this
2   Court's decision regarding the constitutionality of the search to the Ninth
3   Circuit.  On November 26, 2003, the Ninth Circuit dismissed the appeal holding
4   that the District Court had only reached the first issue under *Saucier v. Katz*, 533
5   U.S. 194 (2001) – whether a constitutional right had been violated – and had not
6   reached the second issue as to whether the right was clearly established.  The
7   Ninth Circuit held that this Court's decision was not a final, appealable order and
8   that the County must wait to appeal until the Court rules upon the second prong
9   of *Saucier*.

10          As a result of the Ninth Circuit's dismissal of the appeal, Defendants
11  Deputy Karen Hansen and Sheriff Bob Brooks now move this Court for
12  Summary Judgment Based on Qualified Immunity.  Plaintiff filed a timely
13  opposition.

14                          **LEGAL STANDARD**

15          Federal Rule of Civil Procedure 56(c) provides for summary judgment
16  against a party when "the pleadings, depositions, answers to interrogatories, and
17  admissions on file, together with the affidavits, if any, show that there is no
18  genuine issue as to any material fact and that the moving party is entitled to a
19  judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party seeking summary
20  judgment bears the initial burden of informing the court of the basis for its
21  motion and of identifying those portions of the pleadings and discovery
22  responses which demonstrate the absence of a genuine issue of material fact.  *See*
23  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In judging evidence at the
24  summary judgment stage, the Court does not make credibility determinations or
25  weigh conflicting evidence and draws all inferences in the light most favorable
26  to the nonmoving party.  *See T.W. Elec. Svc., Inc. v. Pacific Elec. Contractors*
27  *Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).  The evidence presented by the
28  parties must be admissible.  *See* Fed. R. Civ. P. 56(e).  Conclusory, speculative

- 3 -

1  testimony in affidavits and moving papers is insufficient to raise genuine issues

2  of fact and defeat summary judgment. *See Thornhill Pub. Co., Inc. v. GTE*

3  *Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**I.     Defendants' Motion for Qualified Immunity**

**A.     Test for Qualified Immunity**

7          Qualified immunity provides public officials sued in their individual

8  capacities with *"immunity from suit* rather than a mere defense to liability."

9  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).  In

10  determining whether a defendant is entitled to qualified immunity, the court must

11  first consider whether, taken in the light most favorable to the plaintiff, do the

12  facts as alleged show the officers' conduct violated a constitutional right.

13  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If a constitutional violation exists

14  "on a favorable view of the parties' submissions, the next, sequential step is to

15  ask whether the right was clearly established." *Id.; see Martinez v. Stanford*, 323

16  F.3d 1178, 1183 (9th Cir. 2003) (stating the two-part test for qualified immunity

17  as: "(1) whether the facts alleged 'show [that] the officer[s'] conduct violated a

18  constitutional right;' and (2) whether the constitutional right in question was

19  'clearly established' such that 'it would be clear to a reasonable officer that his

20  conduct was unlawful in the situation he confronted.'").

21          Whether the law was clearly established is a pure question of law for the

22  Court to decide. *See Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994).

23  This inquiry "must be undertaken in light of the specific context of the case, not

24  as a broad general proposition." *Id.* at 201.  The Ninth Circuit has noted that, in

25  order to find a clearly established right, "we need not find a prior case with

26  identical, or even 'materially similar,' facts.  Our task is to determine whether the

27  preexisting law provided the defendants with 'fair warning' that their conduct

28  was unlawful." *Flores v. Morgan Hill Unified School District*, 324 F.3d 1130,

1137 (9th Cir. 2003) *citing Hope v. Pelzer*, 536 U.S. 730 (2002). "Precedent directly on point is not necessary to demonstrate that a right is clearly established. Rather, if the unlawfulness is apparent in light of preexisting law, then the standard is met. In addition, even if there is no closely analogous case law, a right can be clearly established on the basis of 'common sense.'" *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001) (citations omitted).

**B.    Whether the Acts Committed By Defendant Constitute a Violation of Plaintiff's Constitutional Rights**

In this Court's July 22, 2002 Order Granting in Part Plaintiff's Motion for Summary Judgment, the Court held that "the visual unclothed body cavity search of Plaintiff was unconstitutional." Under the circumstances of this case, where the undisputed facts show that the only basis for her body cavity search was that she had been charged with violating Health and Safety Code Section 11550 and she was released on bail prior to ever having been placed in the general jail population, the search was unreasonable and violated Plaintiff's constitutional rights.

Therefore, the Court has already ruled upon the first prong of the qualified immunity inquiry, finding that Defendants' acts were unconstitutional.

**C.    Whether the Constitutional Right At Issue Was Clearly Established At the Time of the Violation**

In the present motion, Defendants Karen Hansen and Bob Brooks seek qualified immunity on the grounds that the constitutional right in question was not clearly established at the time of Plaintiff's search. Defendants contend that the law was not clearly established that prohibited the blanket search policy to which Plaintiff was subjected primarily because the acts of Defendants were permissible under the law.

1        **1.**      **Established Law Regarding Body Cavity Searches**

2                 **a.**      **Justification for Body Cavity Searches on Less Than**

3                          **Probable Cause**

4        It is important to first note that the intrusiveness of a body cavity search,

5   no matter what the circumstances, cannot be overstated.  "Strip searches

6   involving the visual exploration of body cavities is dehumanizing and

7   humiliating." *Kennedy v. Los Angeles Police Dept.,* 901 F.2d 702, 711 (9th Cir.

8   1990).  In *Bell v. Wolfish*, 441 U.S. 520, 561 (1979), after balancing the

9   significant security interests of the institution against the privacy interests of the

10  inmates, the Supreme Court held that visual body-cavity inspections could be

11  conducted on less than probable cause.  In evaluating whether or not a search

12  was permissible, "Courts must consider the scope of the particular intrusion, the

13  manner in which it is conducted, the justification for initiating it, and the place in

14  which it is conducted." *Id.* at 559.  The "clearly-stated rationale underlying" the

15  decisions in which body-cavity searches of prisoners and detainees are allowed

16  on less than probable cause, "is to protect prisons and jails from smuggled

17  weapons, drugs or other contraband which pose a threat to the safety and security

18  of penal institutions." *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1447 (9th Cir.

19  1991); *see also Kennedy*, 901 F.2d at 713 ("The critical inquiry is whether the

20  LAPD has sufficient justification for imposing its blanket search policy.")

21  Because of this underlying rationale, "courts have distinguished between

22  searches of detainees who were simply awaiting bail, and searches conducted on

23  inmates admitted or about to be admitted to the general jail population." *Id.* at

24  1448.

25                 **b.**      **Circumstances Allowing Body Cavity Search On**

26                          **Less Than Probable Cause**

27        In *Giles v. Ackerman*, 746 F.2d 614 (9th Cir. 1984), the Ninth Circuit

28  applied the rule in *Bell* to hold that "arrestees for minor offenses may be

- 6 -

1  subjected to a strip search only if jail officials have a reasonable suspicion that

2  the particular arrestee is carrying or concealing contraband. . ." *Giles*, 746 F.2d

3  at 614 (holding that strip searching every arrestee booked into County Jail is not

4  necessary to protect the institution's security interest). "Reasonable suspicion

5  must be based on such factors as the nature of the offense, the arrestee's

6  appearance and conduct, *and* the prior arrest record. *Id.* at 617 (emphasis

7  added).  The Ninth Circuit applied this reasonable suspicion test in holding the

8  Los Angeles Police Department's policy of requiring a perfunctory body-cavity

9  search of all felony arrestees unconstitutional. *Kennedy*, 901 F.2d at 716 (strip

10  search of grand theft arrestee was unconstitutional where circumstances of arrest

11  provided no reasonable suspicion to believe that arrestee concealed contraband);

12  *see also Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1446 (9th Cir. 1991) ("Applying

13  *Kennedy*, it is clear that the visual body cavity inspection cannot be justified

14  based on the blanket strip-search policy").  The Ninth Circuit summarized its

15  jurisprudence in this area by pointing out that prior cases had held "such

16  searches were lawful only if an officer had an individualized suspicion that a

17  person was carrying or concealing contraband." *Fuller*, 950 F.2d at 1451.

18                    **c.      Relevant California Law Regarding Body Cavity**

19                                          **Searches**

20          California Penal Code Section 4030 was passed in 1984 by the California

21  Legislature with the intention of protecting the constitutional rights of California

22  citizens. *See* Cal. Pen. Code § 4030.  This section provides that

23              No person arrested and held in custody on a misdemeanor or
        infraction offense, except those involving weapons, controlled
24      substances or violence . . . shall be subjected to a strip search or
        visual body cavity search prior to placement in the general jail
25      population, unless a peace officer has determined there is reasonable
        suspicion based on specific and articulable facts to believe such
26      person is concealing a weapon or contraband, and a strip search will
        result in the discovery of the weapon or contraband.
27
    Cal. Pen. Code § 4030(f).
28

                                            - 7 -

1    In *People v. Wade,* 208 Cal. App. 3d 304, 307-08 (1989), the California

2  Court of Appeals upheld the warrantless body cavity search of an arrestee even

3  though it did not entirely comply with Section 4030. The court noted that

4  Section 4030 was passed in an attempt to codify existing federal constitutional

5  law regarding searches. The court found the fruits of the search need not be

6  suppressed because the search was constitutional under federal law based on the

7  circumstances of the arrest in this case, where the arrestee was visibly under the

8  influence of an opiate and the police who stopped the vehicle in which he was a

9  passenger noticed him rise in his seat several times and his right shoulder dipped,

10  as though he were trying to adjust something in his waist. *See id.* at 307-08. In

11  *People v. Pifer*, 216 Cal. App. 3d 956, 962 (1990), the court evaluated the

12  constitutionality of an X-ray search of a state prison inmate and held that the

13  search "under all the ambient circumstances of this case was reasonable within

14  the meaning of the Fourth Amendment." *Id.* The court in *Pifer* also included,

15  "[w]e hasten to add, however, that we do not suggest prison authorities could

16  conduct a body cavity search on prisoners merely because they are prison

17  inmates without more. There must be some circumstance or information in

18  addition to the mere fact of imprisonment to justify such an invasive procedure."

19  *Id.*

20    **2.    Relevant Facts in the Body Cavity Search Declared**

21      **Unconstitutional In This Case**

22    Defendants contend that, based on federal constitutional and state law, a

23  reasonable officer would believe the search in this case was not violating

24  Plaintiff's constitutional rights and was, in fact, in accordance with the law.

25  Defendants cite to California Penal Code Section 4030 and the decision in

26  *People v. Wade*, in which body cavity searches are allowed under certain

27  circumstances. Defendants contend that Plaintiff's arrest on a drug-related

28  charge, alone, was sufficient to provide reasonable suspicion to perform this

1    search.  Plaintiff responds and argues that the law was clear at the time of the

2    search in question in September 2000 that a strip search could not be performed

3    without reasonable suspicion based on specific articulable facts.  The parties

4    stipulate that the only basis for the search in this case was Plaintiff's arrest for

5    the misdemeanor charge of violation of Health and Safety Code Section 11550

6    and Defendant County of Ventura Sheriff's Department policy of searching all

7    arrestees for Section 11550 violations.

8                        a.      **Purpose of Search**

9             Defendants contend that this search was justified under current law

10   because the purpose of the policy is to ascertain the presence or absence of

11   concealed narcotics or narcotics paraphernalia.  According to Defendants, the

12   policy is exclusively designed and necessary to maintain jail security by ensuring

13   the safety of such individuals who might otherwise ingest the drugs or destroy

14   evidence of the commission of a crime, attempt suicide, or get high.  *See* Defts'

15   Mot. for Summ. Judg. at 7.  Defendants argue that searching all Section 11550

16   arrestees serves this policy.

17            In considering the asserted justification for the search in question, it is

18   important to note that this search was performed on an arrestee who was never

19   actually released into the general jail population.  Plaintiff Way posted bail

20   before being released into the jail population, but the search was performed on

21   her regardless of this fact.  The clearly established rationale for body cavity

22   searches on less than probable cause has been the protection of jail security by

23   preventing the smuggling of weapons, narcotics, and other contraband into the

24   jail facility.  *See Fuller*, 950 F.2d at 1447.   If an arrestee is not released into the

25   general jail population, then the security justification for this search is not

26   present and such a harsh and humiliating search should not be performed absent

27   probable cause, consistent with clearly established Fourth Amendment

28   jurisprudence of the Supreme Court and this Circuit.  Defendants also do not

                                          - 9 -

1 | provide any evidence of seizure of contraband during searches performed

2 | pursuant to this policy to provide justification for this blanket policy.

3 |     Additionally, in examining the actual policy that was implemented by the

4 | Sheriff's Department and followed by the deputy here, the purported justification

5 | is also absent.  The policy allows body cavity searches of misdemeanor arrestees

6 | involving weapons, controlled substances or violence without any articulable

7 | reasonable suspicion that is based on specific facts to believe such person is

8 | concealing a weapon or contraband.  However, with respect to all *felony* arrests,

9 | a strip search "should not be done unless a reasonable suspicion exists that the

10 | person is concealing a weapon or contraband. (1.) Reasonable suspicion may be

11 | based upon the nature of the offense, the arrestees appearance and conduct, and

12 | the prior arrest record."  Jt. Stmt. of Uncontroverted Facts, Exh. C at 14.  A

13 | cursory examination of this written policy demonstrates that the Ventura County

14 | Sheriff's Department allows the body cavity strip search to be performed absent

15 | an articulable reasonable suspicion on misdemeanor drug or weapon arrestees,

16 | but requires a showing of reasonable suspicion on *all* felony arrestees.  If the

17 | Defendants' justification for the blanket search of certain misdemeanor arrestees

18 | were jail security, then the felony arrest policy should mirror the misdemeanor

19 | arrest policy.  This incongruence between the policy for certain misdemeanor

20 | arrests and the policy for felony arrests casts severe doubt upon the need for this

21 | blanket search policy and Defendants' justification for this policy.

22 |     The policy in this case both (a) failed to recognize a difference between

23 | detainees who were released on bail and those who entered the general

24 | population and (b) unexplainably provided a higher standard to perform this

25 | same search on felony drug or weapons arrestees who, under Defendants' theory,

26 | should provide the same (if not greater) risk of contraband as misdemeanor

27 | arrestees.  A reasonable officer reviewing the policy and knowing the established

28 | law in this area would have recognized that the policy of the Sheriff's

- 10 -

1   Department was unconstitutional because the policy did not serve to further any

2   legitimate penalogical interests.

3                              b.      **Basis for Search In This Case**

4          Defendants contend that, based on California law, a fresh misdemeanor

5   charge of violating Health and Safety Code Section 11550 supplies the basis for

6   a visual unclothed body cavity search.  Plaintiff asserts that established law

7   requires that more than a misdemeanor charge of being under the influence of a

8   controlled substance to provide reasonable suspicion that the arrestee has

9   concealed contraband.

10         The parties have stipulated that the *sole* basis for the visual body cavity

11  search of the plaintiff was that she was charged with violating Health and Safety

12  Code Section 11550.  The parties have also stipulated that there is no waiting

13  period to see if an inmate arrested on charges of violating Section 11550 will be

14  released on bail or will enter the general jail population.  Since 1991 and the

15  Ninth Circuit decision of *Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1446 (9th Cir.

16  1991), it has been clearly established that a body cavity search cannot be

17  justified on the basis of a blanket strip search policy *alone*.  This Circuit has

18  repeated that an officer conducting a body cavity search without probable cause

19  must have reasonable suspicion based on such factors as the nature of the

20  offense, the arrestee's appearance and conduct, *and* the prior arrest record.

21  Ventura's blanket search policy does not allow for individualized suspicion, but

22  instead subjects all arrestees, merely because of their status as arrestees, to this

23  highly invasive search.  This is inconsistent with both California and Ninth

24  Circuit law.  *See, e.g., People v. Pifer*, 216 Cal. App. 3d 956, 962 (1990); *Fuller*

25  *v. M.G. Jewelry*, 950 F.2d 1437 (9th Cir. 1991); *Kennedy v. Los Angeles Police*

26  *Dept.,* 901 F.2d 702, 712 (9th Cir. 1990).  A reasonable officer searching

27  Plaintiff in this case should have known that this invasive search violated Ms.

28  Way's constitutional rights if there was no particular belief that Ms. Way was

                                          - 11 -

1   carrying or concealing contraband and no knowledge that she would be admitted

2   to the general jail population (rather than being released on bail, as she was).

3         There are sufficient cases in this area regarding policies allowing body

4   cavity searches for a reasonable officer to know that the body cavity search of

5   Plaintiff, without ever being admitted to the general jail population and based

6   solely on her misdemeanor arrest, was unconstitutional.  Therefore, both the

7   justification for the blanket search policy and the decision to search Plaintiff in

8   this case are contrary to clearly established law.

9                              **CONCLUSION**

10        The Court DENIES Defendants Deputy Sheriff Karen Hanson and Sheriff

11   Bob Brooks' Motion for Summary Judgment based upon qualified immunity and

12   finds that the law prohibiting the visual unclothed body cavity search of Plaintiff

13   under the circumstances of this case was clearly established at the time of the

14   search.

15

16   IT IS SO ORDERED.

17

18   DATED: February _18_, 2003

19                                        CONSUELO B. MARSHALL
                                          Chief, United States District Judge

20

21

22

23

24

25

26

27

28

                                  - 12 -